UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DONNELL NILES, | No. 2:22-cv-1832 TLN AC P |
| Plaintiff, | |
| v. | ORDER AND |
| SANDAR AUNG, | FINDINGS AND RECOMMENDATIONS |
| Defendant. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court are plaintiff's motion to compel and for additional discovery (ECF No. 32) and defendant's motion for summary judgment (ECF No. 34).

I.      Procedural Background

Upon screening the complaint, the court found that plaintiff stated a claim for deliberate indifference against defendant Aung but failed to state an equal protection claim.  ECF No. 7.  Instead of amending the complaint, plaintiff elected to voluntarily dismiss the equal protection claim against Aung and proceed on his deliberate indifference claim only.  ECF No. 10.  After Aung answered the complaint, the undersigned set a schedule for discovery in this case which provided that written requests for discovery were to be served by June 5, 2023, and motions to compel were to be filed by August 4, 2023.  ECF No. 22 at 6.  Plaintiff filed a motion to compel and to extend the time for discovery (ECF No. 32), which defendant opposes (ECF No. 33).

1

Defendant subsequently filed a motion for summary judgment (ECF No. 34), which plaintiff opposes (ECF No. 35).

II.     Plaintiff's Allegations

The complaint alleges that on October 1, 2021, plaintiff broke his right wrist while working at his prison job. ECF No. 1 at 1. After an x-ray confirmed that plaintiff's wrist was fractured, defendant Aung, who was plaintiff's treating physician, cancelled plaintiff's transport to the hospital for urgent care. Id. As a result, plaintiff was left "to linger in pain with a grotesquely broken and swollen wrist" until he was sent for surgery at an outside facility one month later. Id.

During the time plaintiff was forced to wait for surgery, he was given a splint when he should have been given a hard cast, and he did not receive any pain medication until two days after injuring his wrist. Id. at 1-2. When plaintiff reported to Aung that the Tylenol 3 he received made him nauseous, she told him to take over-the-counter ibuprofen which was not effective at managing plaintiff's pain. Id. at 2. As a result of Aung's initial delay in prescribing pain medication and failure to make adjustments when she was informed that the medication was not working, plaintiff suffered from pain in the month prior to his surgery. Id. at 4. The delay in surgery led to incorrect healing, limits on plaintiff's ability to move his wrist, and swelling and pain that have not gone away. Id.

III.    Motion to Compel

The scope of discovery under Federal Rule of Civil Procedure 26(b)(1) is broad. Discovery may be obtained as to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. Under Federal Rule of Civil Procedure 37, a motion to compel may be made if "a party fails to answer an interrogatory submitted under Rule 33." Fed. R. Civ. P. 37(a)(3)(B)(iii). Under Federal Rule of Civil Procedure 36, a party may move for a determination as to the sufficiency of an answer or objection to an admission. Fed. R. Civ. P. 36(a)(6).

////

In this case, plaintiff seeks to compel further responses to Interrogatory Nos. 1-5, 9, 23,[1] and 25, as well as to Request for Admission No. 52. ECF No. 32. The court has reviewed the requests and responses at issue and finds that, while some of the information requested is discoverable,[2] it is ultimately immaterial to resolution of the motion for summary judgment. Since, for the reasons set forth further below, it is being recommended that the motion for summary judgment be granted, the motion to compel will be denied as moot.

IV.  Motion for Additional Discovery

Plaintiff also requests leave to propound additional discovery in the form of additional interrogatories, requests for production, non-party subpoenas, and non-party depositions using interrogatories. ECF No. 32 at 9-16.

With respect to the request for leave to propound additional interrogatories and requests for production, the request comes four months after the time for propounding written discovery expired. See ECF No. 22 at 6 (setting deadline). In considering whether to grant a motion to amend the scheduling order and re-open discovery, the court is to consider:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

City of Pomona v. SQM N. Am. Corp., 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting United

---

[1] Plaintiff initially lists Interrogatory No. 22 as one of the interrogatories for which he seeks a further response, but in briefing the issue he states it is Interrogatory No. 23 at issue. ECF No. 32 at 2, 8.

[2] Plaintiff's Interrogatory Nos. 2, 3, and 5 seek information related to defendant's medical training, medical practice, and discipline she has received, which is relevant and discoverable under the broad scope of Rule 26(b)(1). The remaining interrogatories seek information that is irrelevant or of marginal relevance that is too tenuous to warrant a further response or impose an undue burden on defendant. See ECF No. 32 at 19 (Interrogatory No. 1 requesting rank in medical school), 20 (Interrogatory No. 4 requesting name and address of courts where defendant has been sued), 22 (Interrogatory No. 9 requesting any peer-reviewed literature stating broken wrist is not a medical emergency), 26 (Interrogatory No. 23 requesting list of correspondence related to opioid/narcotic pain medication), 27 (Interrogatory No. 25 requesting any peer-reviewed literature recommending pain for broken bones be treated with NSAIDs).

States ex rel. Schumer v. Hughes Aircraft Co., 63 F.3d 1512, 1526 (9th Cir. 1995)). It is "significant" when a party is seeking to re-open discovery rather than extend the discovery deadline. W. Coast Theater Corp. v. City of Portland, 897 F.2d 1519, 1524 (9th Cir. 1990). "The difference [between the two types of requests] is considerable" because "a request for an extension acknowledges the importance of a deadline, [while] a retroactive request suggests that the party paid no attention at all to the deadline." Id.

While trial has not yet been set in this case, defendant has opposed the request on the grounds that it is untimely and seeks discovery that is largely irrelevant. ECF No. 33 at 16-18. In addition to defendant's opposition, other factors weigh in favor of denying the request. While plaintiff asserts that the additional requests are follow-up questions to defendant's responses, he has not established that the need for this discovery was not foreseeable. The additional requests plaintiff seeks to propound mostly seek information regarding policies related to his treatment and communications defendant had with others (ECF No. 32 at 9-13), and though plaintiff could not have anticipated or known how defendant would respond to his requests, any asserted need for the type of information he now seeks was foreseeable regardless of her responses. Plaintiff has also failed to demonstrate that he has been diligent in pursuing discovery or that there is a likelihood of obtaining relevant evidence. The court already provided plaintiff with a limited re-opening of discovery when it granted his motion for an extension of time and deemed his untimely-served discovery requests timely. ECF No. 31. In doing so, it cautioned plaintiff about his obligation to diligently pursue this case.[3] Id. at 3-4. For these reasons, the court will deny the request to re-open discovery.

The request to serve non-party depositions by interrogatories, which the court construes as a request to extend the time to conduct depositions by written questions, is similarly untimely. There is no indication that plaintiff required leave of the court to conduct the depositions, see Fed. R. Civ. P. 31(a) (setting out circumstances where leave is required), and he fails to establish why

---

[3] The requests were untimely because plaintiff had intended to abandon this lawsuit after he lost his jailhouse lawyer but decided to continue after he found another inmate to assist him. ECF No. 27 at 1-2.

he did not attempt to conduct these depositions prior to the deadline. Moreover, even if the court were to grant plaintiff's request to extend the deadline for depositions by written questions, plaintiff would be responsible for setting up the deposition, including setting the date, time, and location of the deposition, arranging for a court reporter, and paying any fees for the court reporter's services and the transcription of the deposition. See Matthews v. Puckett, 670 F. App'x 964, 965 (9th Cir. 2016) (upholding denial of request for additional copy of deposition transcript because indigent plaintiff "must bear his own discovery costs" (citing Tedder v. Odel, 890 F.2d 210, 211 (9th Cir. 1989) (per curiam))). As one court has noted, "[t]he deposition upon written questions procedure may sound like an inexpensive way for a prisoner to do discovery but usually is not." Lopez v. Horel, No. C 06-4772 SI (pr), 2007 WL 2177460, at *2 n.2, 2007 U.S. Dist. LEXIS 56903, at *7 (N.D. Cal. July 27, 2007). Plaintiff in this case is proceeding in forma pauperis and has not demonstrated that he would be capable of paying the costs necessary to conduct the depositions and the motion will therefore be denied.

Finally, plaintiff requests that the court either direct the United States Marshal to serve a non-party subpoena on the California Department of Corrections and Rehabilitation or direct defendant to respond to his admittedly untimely requests for production. ECF No. 32 at 13-15. With respect to plaintiff's request for service of a subpoena, the court previously denied a similar request and explained that it would not order service of a subpoena unless plaintiff showed that he could not receive the documents by way of discovery requests to defendant. ECF No. 31 at 3. In denying the motion, the court provided plaintiff with additional time to serve requests for production on defendant. Id. at 4. Plaintiff has failed to explain his failure to attempt to obtain the documents through a timely request for production to defendant, despite being given the opportunity to do so, and the request for service of the subpoena or to re-open discovery to serve requests for production on defendant will be denied.

////

////

////

V.    Motion for Summary Judgment

    A.    Parties' Positions

        i.    Defendant's Arguments

Defendant Aung moves for summary judgment on the grounds that she was not deliberately indifferent to plaintiff's medical needs and that she is entitled to qualified immunity. ECF No. 34 at 15-21. She also argues that plaintiff is not entitled to punitive damages. Id. at 21

        ii.    Plaintiff's Response

At the outset, the court notes that while plaintiff has mostly complied with Local Rule 260(b), which requires he specifically identify which facts in defendant's statement of undisputed facts are admitted and which are disputed, he has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." ECF No. 35 at 3-7, 10.

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. (citation omitted).

Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

Plaintiff opposes the motion for summary judgment and argues that defendant was deliberately indifferent to his serious medical need when she failed to provide proper treatment for his broken wrist. ECF No. 35.

### iii. Request for an Extension of Time

Plaintiff has filed a request for an extension of time to file a sur-reply to defendant's motion for summary judgment. ECF No. 41. Local Rule 230(l), which sets out the procedures for civil motions in prisoner cases, contemplates a motion, a response, and a reply. There is no provision for a sur-reply, and plaintiff has not provided any explanation as to why he should be allowed to file one. The motion will therefore be denied.

### B. Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element

of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is

some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

Defendants simultaneously served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary judgment. ECF No. 34-5; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

        C.      Legal Standard for Deliberate Indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not by itself amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" Toguchi, 391 F.3d at 1058 (alteration in original) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

### D. Undisputed Material Facts

Plaintiff only partially responded to Defendant's Statement of Undisputed Facts (DSUF). ECF No. 35 at 3-7, 10. Therefore, in addition to the facts which plaintiff explicitly identified as undisputed (id. at 10), the facts to which plaintiff did not respond are also deemed undisputed except as otherwise discussed.[4]

On October 1, 2021, plaintiff injured his right wrist and was seen forty-five minutes after the injury by defendant Aung, who was his primary care physician. DSUF (ECF No. 34-3) ¶¶ 1-2; ECF No. 1 at 1. Plaintiff informed defendant that his wrist was injured when a food cart rolled back and smashed it, that he could not move his fingers, and that his pain was a "10/10." DSUF ¶¶ 3, 5. Defendant noted that plaintiff's right hand and wrist had immediately swelled and were causing plaintiff pain. DUSF ¶ 4. On examination, defendant found that plaintiff was stable but in pain and noted a deformity in his right wrist with ulnar deviation and angulation. DSUF ¶¶ 7-8; ECF No. 35 at 10. She also noted swelling over the right distal part of the radius and ulnar, limited range of motion for all fingers, and pain during movement. DSUF ¶ 9; ECF No. 35 at 10. Plaintiff's medical records indicate that he advised defendant he had a previous wrist injury and surgery in the 1980s, though plaintiff asserts he did not advise defendant of his prior injury at that time. DSUF ¶ 6; ECF No. 34-3 at 7 (progress note from October 1, 2021); ECF No. 35 at 3 (PL's response to DSUF ¶ 6).

Following the examination, defendant wanted to send plaintiff out to the Minor Procedure Room (MPR) for further evaluation. DSUF ¶ 10.[5] After defendant discovered that there was no provider coverage in the MPR that day, she followed protocol and reported to Chief Physician and Surgeon Dr. Vaughn. DSUF ¶¶ 11-12; ECF No. 35 at 10. Dr. Vaughn determined that plaintiff should be sent to radiology for an x-ray and then to Dr. Snook in the Triage Treatment

---

[4] Plaintiff did not indicate whether DSUF ¶¶ 1-5 and 72-95 were disputed or undisputed.
[5] Plaintiff disputes DSUF ¶ 10, stating that he cannot say what defendant wanted to do but knows she made an initial order to send him to an outside hospital because she said "I'm sending you out" and he was being prepared for outside transportation. ECF No. 35 at 3. This is insufficient to create a dispute of fact and DSUF ¶ 10 is deemed undisputed.

10

Area (TTA) for further evaluation. DSUF ¶ 13.[6] Defendant then sent plaintiff immediately to radiology and notified Dr. Snook that plaintiff would be coming to him for further evaluation. DSUF ¶ 14; ECF No. 35 at 10. Defendant asserts that she never initiated or cancelled a transfer for plaintiff to go to an outside hospital. DSUF ¶ 15. Plaintiff disputes this, stating that he was directed to change into an orange jumpsuit, which does not happen when an inmate goes to the TTA. ECF No. 35 at 2-3.

Before sending plaintiff to the TTA, defendant provided plaintiff with 600 mg of ibuprofen for his pain and a prescription for the same, after which she was no longer in control of plaintiff's care that day.[7] DSUF ¶ 15. The prescription was KOP, meaning "keep on person," which allowed plaintiff to obtain the total pills prescribed and use the medication as needed.[8] DSUF ¶¶ 28-29. While plaintiff alleges a delay in receiving pain medication, he did not ever inform defendant that he had not filled his prescribed medication. DSUF ¶¶ 26-27.

After examining plaintiff's x-ray, Dr. Snook determined that plaintiff's fracture would likely require elective orthopedic surgery, prescribed Tylenol #3 and ibuprofen for the pain, and submitted an urgent request for plaintiff to be authorized for an orthopedic surgical evaluation at San Joaquin General Hospital (SJGH). DSUF ¶¶ 16-17, 62; ECF No. 35 at 3, 10.[9] The request was approved by Dr. Vaughn the same day. DSUF ¶¶ 17, 62. Plaintiff was also placed in a splint. DSUF ¶ 18; ECF No. 35 at 3.

On October 1, 2021, none of the physicians employed at Mule Creek State Prison (MCSP), including defendant, were qualified to perform a presurgical orthopedic evaluation or

---

[6] Plaintiff disputes DSUF ¶ 13 and states that defendant's original order to send him out was the correct decision. ECF No. 35 at 3. However, he does not dispute that Dr. Vaughn made the decision to send him for an x-ray and to the TTA or establish that he is qualified to opine as to the appropriateness of a medical decision and DSUF ¶ 13 is deemed undisputed.
[7] Plaintiff does not dispute this portion of DSUF ¶ 15.
[8] Plaintiff disputes DSUF ¶¶ 26-28 on the grounds that he complained ibuprofen was not effective, that he was in significant pain, and that he continually asked for a more powerful pain reliever. ECF No. 35 at 4. These statements do not create a dispute with the content of DSUF ¶¶ 26-28 and they are deemed undisputed.
[9] Plaintiff disputes DSUF ¶ 16 only on the ground that he was never examined by Dr. Snook. ECF No. 35 at 3. Whether Dr. Snook examined plaintiff is immaterial to resolution of the motion and the remainder of DSUF ¶ 16 is undisputed.

11

orthopedic surgery. DSUF ¶ 23; ECF No. 35 at 10. As a result, MCSP was required to seek outside assistance from a qualified physician at SJGH and MCSP physicians were required to request and receive authorization for those outside consultations. DSUF ¶¶ 24-25; ECF No. 35 at 10.

On October 4, 2021, defendant saw plaintiff and reviewed his x-ray. DSUF ¶ 30; ECF No. 35 at 10. Defendant noted that plaintiff had multiple fractures and that he had suffered a previous wrist injury, though plaintiff asserts that he did not tell her about the injury until after October 20, 2021. DSUF ¶ 31; ECF No. 35 at 5. Defendant also noted that plaintiff had a pending orthopedic evaluation, had an active prescription for 600 mg of ibuprofen, and was to continue wearing his splint and taking medications for his pain. DSUF ¶¶ 32-33.

On October 8, 2021, plaintiff was seen by defendant for a follow-up TTA visit where she confirmed that he had a comminuted fracture of the distal radius with intra-articular involvement, acute to subacute, and probable fracture involving the hamate and an ununited ulnar styloid process. DSUF ¶¶ 34-36. At the time, plaintiff's splint was still in place, he was capable of moving his fingers, and the swelling was coming down, though plaintiff asserts that the swelling was only subsiding because he was paying a kitchen worker for ice. DSUF ¶ 37; ECF No. 35 at 5. Defendant states that plaintiff indicated ibuprofen was helping with his pain, but plaintiff asserts that he never said it was helping, only that it was not strong enough. DSUF ¶ 38; ECF No. 35 at 5. Defendant also states that she discussed with plaintiff that his orthopedic evaluation had been set.[10] DSUF ¶ 39.

On October 20, 2021, plaintiff had an orthopedic consultation with Dr. Dowbak at SJGH. DSUF ¶ 40; ECF No. 35 at 10. Dr. Dowbak reviewed plaintiff's x-ray, confirmed his multiple fractures, and noted that plaintiff had previous wrist injuries. DSUF ¶ 41; ECF No. 35 at 5. The examination showed the plaintiff had pain and swelling with deformity to his right wrist, that the

---

[10] Plaintiff disputes that defendant told him what date his evaluation was scheduled for because doing so is against policy but does not dispute that she advised him his evaluation had been scheduled. ECF No. 35 at 5. Whether she advised him of the specific date of the evaluation is immaterial to resolution of this motion.

12

borders were soft, and the plaintiff was able to flex and extend his fingers. DSUF ¶ 42; ECF No. 35 at 10. It was also noted that there was no excessive pain on extension of the fingers and there was good capillary refill. DSUF ¶ 43; ECF No. 35 at 10. Dr. Dowbak concluded by recommending surgery to repair plaintiff's wrist and recommended that plaintiff be given Tylenol #3. DSUF ¶¶ 44-45; ECF No. 35 at 10.

On October 21, 2021, a request for service for orthopedic surgery was submitted and approved the same day and plaintiff met with defendant for a follow up to his orthopedic evaluation. DSUF ¶¶ 46-47; ECF No. 35 at 10. Defendant informed plaintiff that a request for orthopedic surgery had already been submitted as an urgent request and had been approved but still needed to be scheduled with SJGH. DSUF ¶¶ 48-49, 63; ECF No. 35 at 10. Defendant noted that plaintiff had been given Tylenol for pain as needed, that he informed her he did not tolerate Tylenol well, and that he requested additional ibuprofen, which he received. DSUF ¶¶ 50-51. Plaintiff asserts that he informed defendant on several occasions that he would never take Tylenol because it made him nauseous and did not ask for more ibuprofen but instead requested a stronger pain reliever. ECF No. 35 at 5-6.

On November 4, 2021, Dr. Dowbak conducted a presurgical evaluation and once against noted that plaintiff presented with a deformity of the right wrist with ulnar deviation and angulation. DSUF ¶¶ 52-53; ECF No. 35 at 10. He also noted that there was pain and swelling of the right wrist, but that plaintiff could flex his fingers without excessive pain. DSUF ¶ 54; ECF No. 35 at 10. The next day, plaintiff underwent reparative surgery on his right wrist at SJGH. DSUF ¶ 55; ECF No. 35 at 10. Dr. Dowbak performed an open reduction internal fixation of the right distal radius fracture using a 2.7mm volar locking plate and screws and no complications were noted. DSUF ¶¶ 56-57.; ECF No. 35 at 10.

Dr. Dowbak continued to treat plaintiff throughout his recovery, including removing the plate and screws on May 17, 2022, once he had sufficiently healed. DSUF ¶ 58; ECF No. 35 at 10. Dr. Dowbak repeatedly noted that plaintiff's prior wrist injury, where a tendon was reattached to the hand, would impact his healing and pain, but noted that plaintiff's wrist ultimately healed properly. DSUF ¶¶ 59-60; ECF No. 35 at 10.

1    Defendants assert that any delay between plaintiff's injury, his orthopedic evaluation, and
2 his orthopedic surgery was the result of scheduling with SJGH and the hospital and Dr. Dowbak's
3 availability. DSUF ¶¶ 61, 64. However, plaintiff asserts that SJGH receives emergency patients
4 on a regular basis, his injury called for emergency urgent care, and the delay was due to defendant
5 cancelling his transport on the day of the injury. ECF No. 35 at 6. Defendant and MCSP
6 generally had no control over SJGH's scheduling. DSUF ¶ 65; ECF No. 35 at 6.

7    Plaintiff was prescribed some form of pain medication at all times but wanted something
8 stronger, and the ibuprofen he was prescribed was for a higher concentration that found in over
9 the counter medication. DSUF ¶¶ 68, 70; ECF No. 35 at 10.

10   E.   Discussion
11        i.   Deliberate Indifference

12    In support of her motion for summary judgment, defendant has submitted the declaration
13 of Dr. Feinberg and incorporated the declaration into her statement of facts. DSUF ¶¶ 72-95. Dr.
14 Feinberg opines that the medical care and treatment plaintiff received for his wrist fracture were
15 medically appropriate and met the appropriate community standard of care for best medical
16 practices. DSUF ¶ 75. He states that plaintiff's pain management was appropriate, as he was
17 initially given ibuprofen and Tylenol #3, and there is no indication that morphine, which he
18 received after his surgery, was appropriate preoperatively. DSUF ¶¶ 83-89. There is also no
19 indication in the records that defendant cancelled plaintiff's transportation to an outside hospital.
20 DSUF ¶ 76. Instead, she arranged for him to be immediately transferred to a higher level of care
21 within the prison where the TTA physician could obtain x-rays and determine whether plaintiff
22 needed to be transported to the hospital that day. DSUF ¶¶ 77. The decision to place plaintiff in
23 a splint, which was not defendant's decision, was also appropriate since a hard cast does not
24 allow room for further swelling, and they are mainly used in situations where surgical repair is
25 not being considered. DSUF ¶¶ 79-81. Dr. Feinberg further opines that any delay in plaintiff's
26 surgery did not impact his healing, as Dr. Dowbak never opined that there was a delay and Dr.
27 Dowbak also did not rush plaintiff for emergency surgery and instead scheduled him for an
28 elective surgery. DSUF ¶¶ 91, 93. Plaintiff's injury appears to have healed well, and it is Dr.

Feinberg's opinion that to the extent there was any less that perfect outcome, it was likely attributable to plaintiff having had a prior injury and surgery in the same location in the 1980s. DSUF ¶¶ 93- 95.

In opposition to the motion, plaintiff argues that defendant was responsible for delay between his injury and surgery because she cancelled his transfer to the hospital on the day of his injury. ECF No. 35 at 2-3. He asserts that defendant told him she was sending him out and he was directed to change into an orange jumpsuit, which does not happen when an inmate goes to the TTA. Id. He further argues that his broken wrist was an emergency and that scheduling an appointment was not an issue because "hospitals have and take in emergencies all day long." Id. at 6. He also argues that a splint was not the appropriate method of stabilization, that he should have been in a hard cast, that defendant would have issued ice if swelling was a concern, and that a hospital would have iced down the swelling before putting on a hard cast. Id. at 4. However, plaintiff has not established that he is competent to offer any opinions as to whether his wrist required immediate surgery or as to the proper method of stabilization, and he does not cite to any evidence to support his claim. Instead, his arguments are based on speculation and Dr. Dowbak's alleged statement that being seen "earlier is always better." This is not sufficient to create a material dispute of fact regarding the proper treatment for plaintiff's broken wrist.

Even if the court assumes defendant initially planned to send plaintiff to an outside hospital, it is clear from the record that she ultimately sent him to the TTA where he could be x-rayed and the TTA physician could and did make a determination as to plaintiff's course of treatment after seeing the result of the x-rays. There is no evidence before the court that this was a medically unacceptable course of action. Further assuming Dr. Dowbak told plaintiff that "earlier is always better," this statement is not equivalent to finding the decision to not send plaintiff to the hospital immediately was medically unacceptable, let alone that any conduct by defendant was medically unacceptable.

With respect to pain management prior to surgery, plaintiff's evidence amounts to a difference of opinion that cannot support an inference of deliberate indifference. Toguchi, 391 F.3d at 1058. It is undisputed that plaintiff was prescribed pain medication at all times. DSUF

¶ 70; ECF No. 35 at 10. While plaintiff alleged in his complaint that he was prescribed over the counter strength ibuprofen, the undisputed evidence shows he was prescribed prescription strength ibuprofen and that he was permitted to keep the medication on his person to take as needed. DSUF ¶¶ 28-29, 68; ECF No. 35 at 10. It is further undisputed that when defendant saw him, plaintiff's swelling was coming down and he stated his pain was better.[11] DSUF ¶¶ 37-38; ECF No. 35 at 5. Finally, when plaintiff was seen for an evaluation by Dr. Dowbak, there was no excessive pain when he extended his fingers and Dr. Dowbak did not recommend any pain medication other than what plaintiff was already receiving. DSUF ¶¶ 42, 45; ECF No. 35 at 10. Ultimately, while plaintiff indicates that the prescribed pain medication was not strong enough, he does not present any evidence demonstrating that defendant's prescription was outside the medical standard of care. Defendant is therefore entitled to summary judgment based on her treatment of plaintiff's pain prior to surgery.

        ii. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling Saucier's requirement that the two prongs be decided sequentially). Since the facts taken in the light most favorable to plaintiff do not show the violation of a constitutional right, it

---

[11] While plaintiff argues that the swelling was improved because he was paying another inmate for ice, there is no evidence or allegation that he relayed that information to defendant. ECF No. 35 at 5. Plaintiff testified during his deposition that when he saw defendant on October 8, 2021, his pain was better, though he disputes that he told her the pain was better because of the ibuprofen. ECF No. 34-2 at 91 (PL's Depo. At 76:15-17); ECF No 35 at 5.

is not necessary for the court to address defendant's qualified immunity argument and the court declines to do so.

### F. Conclusion

For the reasons set forth above, defendants' motion for summary judgment should be granted on the ground that defendant did not violate plaintiff's Eighth Amendment rights and the court declines to address defendant's qualified immunity argument.

## VI. Plain Language Summary of this Order for a Pro Se Litigant

The undisputed evidence shows that defendant was not responsible for the delay in your surgery. There is also no evidence that the delay or the failure to provide you with alternate or additional pain medication was medically unacceptable.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel and for additional discovery (ECF No. 32) is DENIED.
2. Plaintiff's motion for an extension of time to file a sur-reply (ECF No. 41) is DENIED.

IT IS FURTHER RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 34) be GRANTED; and
2. Judgment be entered in favor of defendant.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The

////
////
////
////

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 18, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE